The agency removed Mark Guttenberg based on what occurred during and after a verbal argument with a neighbor. An argument Mr. Guttenberg did not start, never turned physical, produced no arrest, and no criminal charge. But the court need not weigh the merits of that confrontation to decide this case because the agency never gave Mr. Guttenberg a fair process to defend himself in the first place. There are three independent grounds for reversal and the court need only reach the first. First, before the agency removed Mr. Guttenberg, it never disclosed the deciding official's Douglas Factor's checklist or analysis, which under Ward v. U.S. Postal Service alone requires reversal. It does not say that explicitly, Judge. What it says is that essentially both Stone and Ward say that the employee must have notice of the information that the deciding official is going to use to sustain the charges, evaluate the charges. And what did he not have notice of? Thank you, Judge. And I wanted to definitely correct the record on that. I know my opening brief references a lack of notice. That was error. In fact, it was, I was referring to a prior proposal letter that did not, that was not the operative proposal letter. What is missing from the Douglas Factor's, in the operative proposal letter versus the Douglas Factor's analysis is Douglas Factor 6, which talks about consistency of the penalty with those imposed on other employees for the same or similar offenses. The finding on Appendix 74 is not listed in the proposal letter. And then Appendix 75, Douglas Factor number 12, the adequacy and effectiveness of alternative sanctions to deter such misconduct in the future. The deciding official's Douglas Factor's worksheet or analysis states, I considered placing Mr. Guttenberg in a non-law enforcement officer position. I do not believe he would do well in, for example, an enforcement removal assistant position. He identifies too strongly as a law enforcement officer and I do not believe he has the personality to humble himself and accept a non-law enforcement position like an ERA. Though that is a critical piece of new and material information that was not included in the proposal letter. Not just the fact that he considered, the deciding official considered the non-law enforcement officer position, but the allegation about Mr. Guttenberg's personality, about that he could not humble himself. Certainly, if Mr. Guttenberg had advanced notice of that, he would have had the opportunity to address that issue specifically. But it is not an outcome determinative test. That is a harmful procedural error analysis. It is, did Mr. Guttenberg have advanced notice of this information so that he could properly defend himself? Otherwise, it is a very clear due process violation that requires reversal. Third, the agency failed to conduct a reasonable inquiry into the allegation that Mr. Guttenberg threw flip-flops onto a roof. That is exonerating information, which Mr. Guttenberg raised in his written response, that there were no photos to support this and the agency failed to take any measures whatsoever before it removed him to actually go look for or even inquire as to whether there were photos. Those photos, of course, did not show up until after the removal was effected and during the discovery process. But why is that not just a credibility issue? Well, it is a 901 issue. It is both a credibility issue and an FRE 901 issue because there was absolutely no foundation for these photographs. And if you look at the record, Judge, Appendix 639 and 640, these pictures show absolutely nothing. They show a sandal that appears to be sitting on something. We don't know what. There was no foundation for them. There was no metadata. Mr. Bradford, the person who claimed that these were his pictures, testified that he actually had two subsequent cameras or phone cameras that were a different make and model and they were produced as PDFs. But he testified that he took the photographs, right? He did testify that he took those photographs. That's correct. So why is that not sufficient? I mean, why is that not sufficient for the fact finder to decide that that happened? That is, well, I would argue, Judge, that you could certainly make that argument that the fact finder could look at it and go, that's sufficient. Our argument is that a 901 requirement asks for more. That this would never pass muster in a trial court, in a Title III trial court. Wait a moment. The investigation by the agency doesn't have to be like a formal trial, right? Correct. And our argument is that the Uske case, USKE cited in our briefs, says that when exonerating information is raised by an employee during the What is exonerating information? Well, if Mr. Bradford had taken those pictures subsequently, if Mr. Bradford had manufactured those pictures, if they weren't even his pictures, that would certainly impeach his statement. But we don't have any information that suggests any of those things. I'm sorry. I'm not trying to. We don't have any information that suggests that Mr. Bradford didn't take those pictures, or somehow there was some issue with his camera. There's no such information, other than I suppose your client's suggestion. Yeah, that's correct, Judge. Essentially, the judge made a credibility determination on that, even though we had three witnesses, Mr. Guttenberg and his two witnesses, Ms. Nelson and Mr. Higgins, who said they never saw anybody throw anything onto the roof. But as we know, credibility Are you arguing that the judge cannot make credibility determinations? Not at all, Your Honor. The argument is that credibility determinations are not impenetrable. And if you'll excuse the sports analogy, they are not protected by the 1970s steel curtain defense. You can penetrate them if they are based on certain factors. If you look at the evidence, especially in its totality, and go, this doesn't make sense. The judge misstated some evidence, got some things wrong, twisted some things. We gave you some examples of that in our briefs. How did the judge misstate the evidence? So I have a couple of examples. If you look at the ID, the initial decision in this case. For one, the order that the judge evaluated the facts in, she got it wrong. One thing that she noted, which is completely contrary to the evidence, is that Mr. Rowland, the ID indicates that Mr. Rowland saw the picture, saw Mr. Gutenberg throw the flip flops onto the roof. That actually never occurred. Mr. Rowland did not come out of his apartment until after the 911 call was placed, which was after the flip flops were allegedly thrown onto the roof. So the judge completely got that fact incorrect. The judge also made a number of... Yes, that's what Mr. Rowland testified to, although that's not what he initially said to the officer. I believe, actually, that is what he said initially to the officer, but then later denied doing so. There were so many conflicting testimony in this case, it's hard to almost strip it out as to what happened. But that was the determinative factor, in many ways, for this judge, was Mr. Rowland supposedly corroborating testimony. And I would like to reserve the rest of my time for... I have a couple of questions about this incorporation of the earlier response. The earlier response that you referenced on page 139 of the appendix did not include Higgins' affidavit of declaration, correct? No, Judge, the written response that... Yes, it did not include Higgins. It did not include Higgins' declaration. It included Ms. Nelson's. Okay. But there's no reference here to the Nelson affidavit. In the written response? No, on page 139. It says this written response includes additional important pieces of evidence, and it says the declaration from Higgins, but it doesn't mention Nelson, right? It does not specifically mention Nelson, Judge. It does say the response incorporates his prior responses herein, and then later in that same paragraph, this evidence coupled with D.O. Guttenberg's prior written responses unquestionably exonerates D.O. Guttenberg. And, yes, clearly the deciding official, although he vacillated significantly during his deposition, he said he didn't review it. Then later he testified under oath again that he did review it, but the judge's findings were that, in fact, he did not review Ms. Nelson's affidavit. And, you know, looking back, it would have been certainly better practice to actually include the affidavit itself. Or perhaps mention it explicitly. Mention it explicitly, absolutely. That does not, however, excuse the agency from ignoring it because it was presented to the agency. Certainly different deciding officials, but it absolutely was before the agency. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court. Mr. Guttenberg seeks to overturn the removal decision based upon an attack on the administrative judge's credibility determination by applying the wrong legal standard for off-duty behavior and by failing to identify actual due process errors made by the court below. And I want to particularly respond to some of the points that my colleague made in his direct. He mentioned that he wanted to correct his reply brief in that his reply brief suggested that the checklist used as a draft for the agency to consider the Douglas factors. Somehow the absence of that information prejudiced Mr. Guttenberg and the agency process. He, for the first time, acknowledges that his reply brief actually referred to the wrong version of that removal decision. And, in fact, the real removal decision, the March 24, 2022 removal decision, did include the only example of, quote, new information that he identified in his brief as being only provided in the checklist. The Giglio. Yes, the Giglio material, which, of course, is well covered in our actual removal decision. At page appendix 218 for a whole paragraph, the removal decision goes on to say, or proposed removal, goes on to say that your lack of candor towards TPD officer Guillardo and OPR is extremely serious because it renders you Giglio impaired. He goes on to explain in that paragraph why that created the agency's questioning of his ability to testify or serve as a witness on behalf of the government. Clearly a very serious reason to support his removal. That was the only example that the petitioner provided in his reply brief of new information that was provided in the checklist and not in the removal decision, and he was wrong. Now he seeks for the first time at this forum in his oral argument to correct that. I think that is properly waived. And his arguments about other information that may have been in the checklist that wasn't in the proposed removal simply shouldn't be considered by this court. But even if they are, the first factor he mentioned, which was that the deciding official did not look at other comparators, that isn't a substantive discussion in the checklist. The checklist really says that the agency concluded that there were no comparators or that they didn't weigh that factor at all. The second example he gave, which was that there was a reference in the checklist to the agency considering moving Mr. Guttenberg to another law enforcement position. It's simply not a factor that was weighed clearly in the checklist at all. It didn't make it to the removal decision, so it's not clear that it was actually considered as we moved from that draft checklist to the final proposed removal decision. So it wasn't prejudicial to Mr. Guttenberg, and they can't show that today. But generally speaking, the credibility determination that Mr. Guttenberg is attempting to challenge should, while not unpierceable, is certainly virtually unreviewable, as this court has found in the past. And Mr. Guttenberg, in his own standards, suggests that he would have to show that it's inherently improbable that a decision-maker would come to a different result or that undisputed facts discredit it. The record does not support either conclusion. First, Mr. Guttenberg doesn't challenge Mr. Cantu, the proposing official's testimony or credibility, at all. So the choice of the administrative judge to credit the agency's removal rationale and decision-making shouldn't be at issue. Secondly, the attacks that Mr. Guttenberg makes on Mr. Bradford, the witness's credibility, are at best hair-splitting. He claims that Mr. Bradford knew the other witness credited by the administrative judge, Mr. Rowland, and had a closer relationship than was credited. But for this point, he only suggests that Mr. Bradford knew Mr. Nelson's legal name, the dimensions of his apartment, and had petted his dog. None of these facts suggest that there's some significant evidence of a relationship that would have impacted the testimony that Mr. Rowland provided. And indeed, the police reports make it clear that the statements that Mr. Bradford and Mr. Rowland provided about the events in question were made so close in time that, you know, there was no opportunity for them to collaborate on the substance. Also, the administrative judge goes on at length about the reasons why, in her demeanor-based assessment of Mr. Bradford's credibility, she found him compelling. First, Mr. Bradford gave the same information consistently about the sandals and the other events from the first 911 call to the police report to his testimony before the administrative judge. Mr. Bradford admitted to actions that didn't show him in the best light, including the use of provanity and acknowledging that he was behaving in a manner he wasn't particularly proud of. Mr. Bradford's demeanor was consistent with providing truthful testimony. He provided quick, thorough, and consistent answers. He also, there was no reason for bias for Mr. Bradford. Mr. Guttenberg has acknowledged that Mr. Bradford and Mr. Guttenberg did not know each other prior to the incident. Mr. Bradford also elected not to press charges against Mr. Guttenberg immediately following the incident, suggesting again he didn't hold the kind of animus that would have prompted him to exact some sort of vengeance, nor did he receive any benefit from providing his testimony, and the important parts of his testimony were corroborated by the Tempe police's body cam footage. Attempts to ask this court to reweigh other testimony that was credited by the administrative judge are similarly unavailing. Mr. Guttenberg just argued that Mr. Rowland admitted he didn't see all of the events in question and that that suggests some sort of inconsistency in his testimony. But what Mr. Guttenberg is relying on is the fact that at some point Mr. Rowland walked outside of his residence and then began observing from outdoors what happened. I'm not sure if Mr. Guttenberg is familiar with the concept of windows, but they do occur frequently in a residential setting. So the possibility that Mr. Rowland could have been observing the events from a window in his apartment have never been disputed by the petitioner, and we shouldn't assume they would be here. Mr. Guttenberg's argument also relies upon the testimony of Ms. Nelson and Mr. Higgins, both of whom appeared live at the MSPB hearing. But Ms. Nelson had a relationship with Mr. Guttenberg, apparently was at some point of a romantic nature. She certainly lived with them. She slept in his bed. They were roommates at the time of the incident. And she admitted that she turned her back to Mr. Guttenberg during the altercation. For instance, she admitted she didn't see him kick over the trash can, which she later acknowledged definitely happened. She didn't see all of the events, so she can't say that he didn't throw the sandals onto the roof. Likewise, there is evidence in the record that Mr. Higgins, the other roommate that Mr. Guttenberg attempted to proffer as a witness here, walked away and searched elsewhere during the incident. So he, too, did not observe all of the facts. Importantly, neither Ms. Nelson nor Mr. Higgins observed anyone throwing the sandals onto the roof, and yet they got there. This was a point that the administrative judge considered seriously in her testimony. There was no other credible explanation for the events at question other than Mr. Guttenberg throwing the sandals on the roof. And, again, he, aside from his own testimony, offered nothing to really dispute that. In addition to the credibility evidence, which, again, Mr. Guttenberg has offered no reason to pierce football analogies notwithstanding, Mr. Guttenberg also suggests that the off-duty misconduct conducted by Mr. Guttenberg had to meet some sort of standard of egregiousness. That isn't what's supported by the law. The standard for off-duty conduct in the nexus analysis has three prongs. Those prongs are in the alternative. The first prong requires egregious circumstances. That word appears nowhere in the other two prongs. Rather, the agency here relied on prong two, a showing by preponderant evidence that the misconduct adversely affects the appellants, the co-worker's job performance score, the agency's trust and confidence. And the agency more than met that preponderance standard. Mr. Guttenberg's lack of cooperation and dishonesty impacted his ability to work with local law enforcement. His lack of candor would have to be disclosed in any case in which he was asked to testify, rendering him potentially giglio impaired. Mr. Cantu, again, his credibility was found by the court and not challenged by Mr. Guttenberg, testified that he believed that Mr. Guttenberg was giglio impaired. And there's no requirement, despite Mr. Guttenberg's argument to the contrary, that the DOJ somehow bless a giglio impairment. In fact, the agency has to make decisions about how to assign agents to cases long before any referral to the DOJ is right or possible. They have to evaluate potential giglio problems before then. While Mr. Guttenberg has claimed during the pendency of the investigation and his removal he was essentially performing the same duties, that's not what he admitted when testifying. Rather, he testified that he could not carry his weapon. He did not participate in the SRT or the Special Response Task Team, which is a kind of federal SWAT, which is what he did before. He performed no field work. He also, though he testified that he participated in arrests, there is no testimony suggesting he was alone participating in any arrests. In other words, that the agency depended upon him to be the only witness who could testify in support of that arrest and prosecution, which, again, is part of his duties. So I don't think that they've established at all that he was able to perform all of the duties while the investigation and removal were pending, though certainly the fact that they were pending was reason for the agency not to take significant or unchangeable acts to limit his duties. And finally, the agency doesn't have to wait until a disaster occurs for it to take action. The Connick case establishes that an employer has no obligation to allow events to unfold to the extent that the destruction of the office or the destruction of working relationships is manifest. They saw that threat in how Mr. Gutenberg engaged with law enforcement and the pattern in which he engaged with the public and acted to stop that threat from actually damaging the work of the agency. And Connick has been applied by this court in an MSPB process, and while this is not in the briefs, it's Ming versus Department of Justice, and I have copies of that should the court wish to review it. But even if that weren't the consideration, as our brief argues, the reasonable loss of trust and confidence in an employee is sufficient to establish the nexus that's in Brook versus Corrado, and there's no reason why the court shouldn't follow that law in this case. I've addressed the due process violation with respect to the checklist. I would just say that the other due process claims that the petitioner has raised are no more availing than that one. The Nelson and Higgins affidavits that Mr. Gutenberg suggests were before the agency were not provided directly in response to the second proposed removal, that is the one that is actually before this court. The fact that they may have been somewhere in the files of the Department of Homeland Security is really not availing and not the standard if Mr. Gutenberg wanted it to be considered.  Well, the standard is that Mr. Gutenberg had to have an opportunity to produce evidence to the government to defend his position. But as I understand it, there was no order or express policy that things that you rely on have to be produced in physical form instead of being incorporated, right? I'm not aware of a policy, Your Honor, but if you look at it from the perspective of Mr. Gutenberg having an obligation to defend himself, he should have known that not producing the thing that he wished the agency to rely upon is far less effective than actually producing it. And beside the fact that of the two declarations or affidavits that they wish to rely on, the Higgins declaration is never something that the petitioner argued was a due process violation for the court. The Higgins affidavit wasn't part of the original submission. Right. And the Nelson declaration was something that didn't actually address the question of who threw the flip-flops. So there really is no prejudice in the sense that she said she recited what she said to the local law enforcement officers. She provided an affidavit stating what she observed. And the most salient part of what she said was that she did not observe Mr. Gutenberg. I thought she said that she told the law enforcement officers that he didn't throw the flip-flops on the roof. That would be at 136. It says on 136, she told police that Mr. Gutenberg did not throw his flip-flops or kick his own flip-flops off. She told police that Mr. Gutenberg did not throw his flip-flops or anything for that matter on top of the roof or elsewhere. And then she goes on to say a few sentences down. She says that she told police Mr. Gutenberg did not kick over his garbage can, but that after that incident, Mr. Gutenberg told her she did. She says that that must have been when her back was to Mr. Gutenberg. And she was trying to stop the Mr. Bradford from stopping towards Mr. Gutenberg and goading Mr. Gutenberg into fighting him. She also says later that she was picking up the trash at some point. So there were at least two times she admits in her affidavit she was not looking at Mr. Gutenberg. She cannot attest to the fact that he did not throw his flip-flops. She can only say she didn't see him do it. So that would be the limit of the affidavit, as was before the agency. But even if that weren't the case, the fact that her credibility was linked to her relationship, long-term romantic roommate relationship with Mr. Gutenberg, would have weighed against the credibility for which her statements were taken by the agency. And there's no evidence that the agency would have changed its determination about whether Mr. Gutenberg threw the flip-flops based solely on this declaration. Thank you. Thank you, Ron. A couple of things to address in rebuttal. The appellee indicated that we cited the wrong legal standard for off-duty behavior. That's not accurate. There are three ways under Kruger to show off-duty nexus, the rebuttable presumption in certain egregious circumstances, which the appellee's brief conceded is not in this case. And also, essentially, the judge really didn't evaluate it. That the misconduct adversely affects either the employee's performance of his duties, coworkers' performance of their duties, or affects the agency's mission. Or the misconduct interfered with or adversely affected the agency's mission. Those are the three, essentially, and the agency's brief argued two and three. But when it's a trust and confidence argument with off-duty nexus, they have to show actual impact on the agency's mission. Yet all the deciding official did, and unfortunately the administrative judge doubled down on it, was that it could have had an impact, or it possibly might have had an impact. There was no evidence whatsoever that it actually had an impact. In fact, Mr. Gutenberg continued to do his duties. He certified, he trained and certified every single officer in that agency on defensive tactics. He participated in arrest operations. He received an excellent performance evaluation. Even the deciding official said that his performance was outstanding and excellent. So how can the agency, in good faith, claim that the agency's mission was actually affected? The trust and confidence was clearly demonstrated by Mr. Gutenberg's chain of command, not a deciding official sitting completely attenuated from this. The other argument that I wanted to raise was that Douglas Factor 12, essentially the allegation that that was not weighed by the deciding official, because it was in the Douglas Factors worksheet, but not in the decision letter. Well, that's not the legal standard. And this was a problem throughout the agency's brief, that they conflated due process with harmful procedural error. And essentially they argued that, look, he didn't weigh it, therefore it's not a due process violation. That is the outcome determinative standard, not the due process standard. The fact that it was in there, and it was not given to Mr. Gutenberg ahead of time in his proposal, that's not a due process violation. The fact that it was not in the proposal notice alone requires reversal. The argument that Mr. Rowland could have seen things through the window in his apartment, well, there was no evidence about that. There was no testimony, there was no allegation that Mr. Rowland saw things through the window. That is a manufactured fact or argument that simply doesn't exist in the record. And I ask that it not be considered.